**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, BOSTON RETIREMENT SYSTEM, ROOFERS LOCAL 149 PENSION FUND, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, KBC ASSET MANAGEMENT NV, ERSTE-SPARINVEST KAPITALANLAGEGESELLSCHAFT M.B.H., STICHTING BLUE SKY ACTIVE LARGE CAP EQUITY FUND USA, and AARON ROCKE, and derivatively on behalf of Nominal Defendant TESLA, INC., | |
| Plaintiffs, | No. 17-cv-00461-VAC-CJB |
| v. | **REDACTED PUBLIC VERSION** |
| ELON MUSK, BRAD W. BUSS, ROBYN M. DENHOLM, IRA EHRENPREIS, ANTONIO J. GRACIAS, STEPHEN T. JURVETSON, and KIMBAL MUSK, | |
| Defendants, | |
| and | |
| TESLA, INC., | |
| Nominal Defendant. | |
| FRANCIS B. FREEMAN, JR. and MARNIE WALSKI MCMAHON, derivatively on behalf of TESLA, INC., | |
| Plaintiffs, | |
| v. | No. 17-cv-00317-VAC-CJB |
| ELON MUSK, BRAD W. BUSS, IRA EHRENPREIS, ANTONIO J. GRACIAS, STEPHEN T. JURVETSON, ROBYN M. DENHOLM, and KIMBAL MUSK, | **REDACTED PUBLIC VERSION** |
| Defendants, | |
| and | |
| TESLA, INC., | |
| Nominal Defendant. | |

**INSTITUTIONAL PLAINTIFFS' BRIEF IN SUPPORT
OF MOTION FOR CONSOLIDATION AND TO APPOINT
CO-LEAD PLAINTIFFS AND CO-LEAD COUNSEL**

Dated:  May 4, 2017

OF COUNSEL:

**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
Lee D. Rudy
Eric L. Zagar
Robin Winchester
Kristen L. Ross
280 King of Prussia Road
Radnor, PA  19087
(610) 667-7706
lrudy@ktmc.com
ezagar@ktmc.com
rwinchester@ktmc.com
kross@ktmc.com

**ROBBINS GELLER RUDMAN**
   **& DOWD LLP**
Randall J. Baron
Maxwell R. Huffman
655 West Broadway, Suite 1900
San Diego, CA  92101
(619) 231-1058
randyb@rgrdlaw.com
mhuffman@rgrdlaw.com

*Proposed Co-Lead Counsel*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
140 Broadway
New York, NY  10005
(212) 907-0700
ckeller@labaton.com
ebelfi@labaton.com

**GRANT & EISENHOFER P.A.**

Jay W. Eisenhofer (#2864)
James J. Sabella (#5124)
Michael T. Manuel (#6055)
Kelly L. Tucker
123 Justison Street
Wilmington, DE  19801
(302) 622-7000
jeisenhofer@gelaw.com
jsabella@gelaw.com
mmanuel@gelaw.com
ktucker@gelaw.com

*Proposed Co-Lead Counsel*

**PRICKETT, JONES**
   **& ELLIOTT, P.A.**
Michael Hanrahan
Paul A. Fioravanti, Jr.
Samuel L. Closic
1310 N. King Street
Wilmington, DE  19801
(302) 888-6500
mhanrahan@prickett.com
pafioravanti@prickett.com
slclosic@prickett.com

**LABATON SUCHAROW LLP**
Ned Weinberger
Ian Connor Bifferato
Thomas Curry
300 Delaware Ave., Suite 1340
Wilmington, DE  19801
(302) 573-2540
nweinberger@labaton.com
cbifferrato@labaton.com
tcurry@labaton.com

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Mark Lebovitch
Jeroen van Kwawegen
1251 Avenue of the Americas
New York, NY  10020
(212) 554-1400
markl@blbglaw.com
jeroen@blbglaw.com

**FRIEDMAN OSTER & TEJTEL PLLC**
Jeremy S. Friedman
Spencer Oster
David F.E. Tejtel
240 East 79th Street, Suite A
New York, NY  10075
(888) 529-1108
jfriedman@fotpllc.com
soster@fotpllc.com
dtejtel@fotpllc.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence Eagel
Brandon Walker
885 Third Avenue, Suite 3040
New York, NY  10022
(212) 308-5858
eagel@bespc.com
walker@bespc.com

**STURMAN LLC**
Deborah Sturman
600 Third Avenue, Ste. 2101
New York, NY  10016
(212) 367-7017

*Additional Counsel*

**FRIEDLANDER & GORRIS,**
**P.A.**
Joel Friedlander (#3163)
Jeffrey M. Gorris (#5012)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500
jfriedlander@friedlandergorris.com
jgorris@friedlandergorris.com

**GUTTMAN, BUSCHNER**
**& BROOKS PLLC**
Justin S. Brooks (#6119)
501 Silverside Road, Suite 12
Wilmington, DE  19809
(302) 327-9210
jbrooks@gbblegal.com

*Additional Counsel*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

I.      NATURE AND STAGE OF PROCEEDINGS ................................................ 1

II.     SUMMARY OF ARGUMENT ........................................................................ 4

          1.     The Court Should Consolidate the Related Actions. ................................... 4

          2.     The Court Should Appoint the Institutional Plaintiffs Lead Plaintiffs and Should Appoint G&E, KTMC, and RGRD Co-Lead Counsel. ....................................................................................................... 5

III.    STATEMENT OF FACTS .............................................................................. 5

      A.     Background of the Acquisition ..................................................................... 6

      B.     The Institutional Plaintiffs' Section 220 Investigation and Complaint ................. 6

      C.     The Related Actions ..................................................................................... 7

      D.     The Institutional Plaintiffs' Establishment of a Leadership Structure ................... 8

IV.    ARGUMENT .................................................................................................. 9

      A.     The *Freeman* and the Institutional Actions Should Be Consolidated .................... 9

      B.     The Court Should Appoint the Institutional Plaintiffs and Their  Counsel Co-Lead Plaintiffs and Co-Lead Counsel, Respectively ...................................... 10

          1.     The Financial Interest of the Institutional Plaintiffs ................................. 10

          2.     The Institutional Plaintiffs Filed a Superior Complaint ............................ 12

               a.     Allegations Based on the 220 Documents ..................................... 13

               b.     Allegations Regarding Evercore's Deficient Fairness Opinion ..................................................................................... 14

               c.     ███████████████████████████ ........................................... 15

          3.     The Institutional Plaintiffs Negotiated Their Attorney's Fees in Arms-Length Transactions ......................................................................... 16

i

4.     The Institutional Plaintiffs Have Already Begun Litigating this
Action Vigorously and For the Benefit of Tesla and its
Stockholders, and Are Willing and Able to Continue Doing So ............. 17

C.     The Institutional Plaintiffs' Counsel Should Be Appointed Co-Lead
Counsel ........................................................................................................... 17

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. Consol. Derivative Litig.*,
  C.A. No. 769-VCS (Del. Ch. Jan. 25, 2011) ....................................................18

*In re Ancestry.com Inc. S'holder Litig.*,
  No. 7988-CS (Del. Ch. Dec. 12, 2013)............................................................19

*Beam v. Stewart*,
  845 A.2d 1040 (Del. 2004) ..............................................................................13

*In re Comverse Tech., Inc. Derivative Litig.*,
  No. 06-cv-1849, 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006) .........................12

*In re Del Monte Foods Co. S'holders Litig.*,
  C.A. No. 6027-VCL (Del. Ch. Dec. 1, 2011) ...................................................19

*In re: Digex, Inc. S'holders Litig.*,
  No. 18336NC, 2001 WL 34131305 (Del. Ch. Apr. 6, 2001) ............................18

*In re Dole Food Co., Inc. Stockholder Litig.*,
  C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015) ..................18

*Dollens v. Zionts*,
  No. 01-cv-5931, 2001 WL 1543524 (N.D. Ill. Dec. 4, 2001) ...............17, 18, 19

*Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*,
  339 F.2d 673 (3d Cir. 1964) ................................................................................9

*In re Foundry Networks, Inc. Derivative Litig.*,
  No. 06-cv-05598, 2007 WL 485974 (N.D. Cal. Feb. 12, 2007)........................11

*Francis B. Freeman, Jr. et al. v. Elon Musk et al.*,
  No. 1:17-cv-00317-VAC-CJB (D. Del.)....................................................*passim*

*In re Globe Specialty Metals, Inc. Stockholders Litig.*,
  C.A. No. 10865-VCG (Del. Ch. Feb. 15, 2016).................................................18

iii

*In re GSI Commerce, Inc. S'holder Litig.*,
   C.A. No. 6346-VCN (Del. Ch. Nov. 15, 2011) ..................................................18

*Horn v. Raines*,
   227 F.R.D. 1 (D.D.C. 2015) .................................................................................12

*In re Johnson & Johnson Derivative Litig.*,
   865 F. Supp. 2d 545 (D.N.J. 2011) .....................................................................12

*KBC Asset Management NV v. McNamara*,
   78 F. Supp. 3d 599 (D. Del. 2015).....................................................9, 10, 12, 17

*Louisiana Mun. Police Employees' Ret. Sys. v. Crawford*,
   C.A. No. 2635-CC (Del. Ch. Jun. 8, 2007) .......................................................18

*N. Miami Beach Gen. Employees Ret. Fund v. Parkinson*,
   No. 10-cv-6514, 2011 WL 12465137 (N.D. Ill. July 5, 2011)....................12, 16

*RBC Capital Mkts. LLC v. Jervis*,
   129 A.3d 816 (Del. 2015) ...................................................................................18

*Soto v. Hensler*,
   No. 16-cv-292-LPS-CJB, 2017 WL 590304 (D. Del. Feb. 14,
   2017) .....................................................................................................................9

*In re Southern Peru Copper Corp. S'holder Derivative Litig.*,
   52 A.3d 761 (Del. Ch. 2011) ..............................................................................18

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
   No. 18289, 2000 WL 1654504 (Del. Ch. Oct. 17, 2000) ...................................13

**Statutes**

Delaware General Corporation Law Section 220 .............................................*passim*

Energy Policy Act of 2005.................................................................................14, 15

**Other Authorities**

FED. R. CIV. P. 12(b)(6)............................................................................................6

FED. R. CIV. P. 42(a)(2)-(3) .....................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs Arkansas Teacher Retirement System ("ATRS"), Boston Retirement System ("Boston"), Oklahoma Firefighters Pension and Retirement System ("OFPRS"), Roofers Local 149 Pension Fund ("Roofers"), KBC Asset Management NV ("KBC"), ERSTE-SPARINVEST Kapitalanlagegesellschaft m.b.H. ("ESK") and Stichting Blue Sky Active Large Cap Equity Fund USA ("Blue Sky," and together with ATRS, Boston, Roofers, OFPRS, KBC and ESK, the "Institutional Plaintiffs")[1] submit this brief in support of their motion (the "Motion") seeking (i) consolidation of the above-captioned actions (the "Related Actions"); (ii) appointment of the Institutional Plaintiffs as Co-Lead Plaintiffs in the consolidated action concerning the self-interested acquisition of SolarCity Corporation ("SolarCity") by Tesla, Inc. (f/k/a Tesla Motors, Inc.) ("Tesla" or the "Company") pursuant to an Agreement and Plan of Merger dated July 31, 2016 (the "Acquisition"); and (iii) the appointment of their chosen counsel, Grant & Eisenhofer P.A. ("G&E"), Kessler Topaz Meltzer & Check, LLP ("KTMC"), and Robbins Geller Rudman & Dowd LLP ("RGRD"), as Co-Lead Counsel in the consolidated action.

## I.   NATURE AND STAGE OF PROCEEDINGS

This litigation arises out of the bailout of solar system installer SolarCity by automobile manufacturer Tesla and its Chairman, Chief Executive Officer ("CEO") and largest stockholder, Elon Musk ("Musk"). Having founded SolarCity with his cousins, Musk was also Chairman of the SolarCity Board of Directors and SolarCity's largest stockholder. Despite SolarCity being unable to consistently turn a profit, facing mounting debt, and burning through cash at an

---

[1] Plaintiff Aaron Rocke ("Rocke"), who is also a named plaintiff in the Institutional Plaintiffs' Complaint (defined herein) filed in the action *Arkansas Teacher Retirement System et al. v. Elon Musk et al.*, No. 17-cv-00461-VAC-CJB (the "Institutional Action"), supports the Institutional Plaintiffs' motion, but is not seeking appointment as Co-Lead Plaintiff.

unsustainable rate, Tesla announced on June 21, 2016 that it had made an offer to acquire SolarCity.  On August 1, 2016, Tesla and SolarCity announced that they had executed a merger agreement pursuant to which Tesla would acquire SolarCity in an all-stock deal (the "Acquisition").  By doing so, Musk and the remaining members of the Tesla Board of Directors (the "Tesla Board" or the "Tesla Defendants"), nearly all of whom have strong personal and financial ties to Musk and are substantial SolarCity stockholders, rescued the struggling SolarCity and served their unique financial interests.

Following the announcement of the Acquisition, the Institutional Plaintiffs quickly took action to investigate claims against the Tesla Board.  In August and September 2016, each of the Institutional Plaintiffs, which collectively own 76,616 shares of Tesla common stock worth over $23 million,[2] sought to obtain books and records from Tesla related to the Acquisition pursuant to Section 220 of the Delaware General Corporation Law ("Section 220").  Tesla produced over 1,800 pages of confidential documents in response thereto (the "220 Documents"), which included, *inter alia*, ██████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████

While the Institutional Plaintiffs sought to leverage the 220 Documents to enhance their pleadings, others went straight to court.  Between September 1 and September 13, 2016, three other Tesla stockholders filed actions in Delaware Court of Chancery (the "Court of Chancery") bringing claims challenging the Acquisition.  After being advised that additional actions would be filed following the completion of Tesla's production of 220 Documents, the Court of Chancery ordered a deadline for the filing of plenary actions bringing claims related to the

---

[2] Per Tesla's closing stock price on May 3, 2017 of $311.02.

Acquisition and set a schedule with respect to motions to appoint lead plaintiff and lead counsel. On September 30, 2016, the Institutional Plaintiffs filed in the Court of Chancery an omnibus complaint, bringing both derivative claims on behalf of Tesla and direct claims on behalf of the Company's stockholders, and integrating key facts derived from the 220 Documents regarding ██████████████████████████████████████████████████████ On October 19, 2016, following briefing and oral argument from three plaintiffs' groups, the Court of Chancery appointed the Institutional Plaintiffs as co-lead plaintiffs in a consolidated action (the "State Court Action"), with G&E, KTMC, and RGRD serving as co-lead counsel.

After the Acquisition closed, the Tesla Defendants moved to dismiss the State Court Action.  In response, the Institutional Plaintiffs filed an amended complaint on March 9, 2017 (the "Second Amended Complaint"), which adds detailed allegations concerning the deficiencies in the proxy statement (the "Proxy") issued by the companies on October 12, 2016 and the coercive nature of the stockholder vote on the Acquisition.  On March 17, 2017, the Tesla Defendants moved to dismiss certain causes of action in the Second Amended Complaint, and the parties to the State Court Action have agreed to a corresponding briefing schedule.

On March 24, 2017, over seven months after the Acquisition was first announced, Plaintiffs Francis B. Freeman, Jr. and Marnie Walski McMahon (the "Individual Plaintiffs") filed an action in this Court (the "*Freeman* Action"), which similarly brings claims derivatively on behalf of Tesla and alleging that "the Acquisition was essentially a bailout of SolarCity." *Francis B. Freeman, Jr. et al. v. Elon Musk et al.*, No. 1:17-cv-00317-VAC-CJB (D. Del.), Complaint ¶ 24.  Although their counsel had recently made a books and records demand on behalf of other Tesla stockholders, the Individual Plaintiffs in the *Freeman* Action did not receive any confidential materials pursuant to any such demand prior to filing their action, nor

did they participate in the prior proceedings in the Court of Chancery concerning leadership for the State Court Action.  On April 21, 2017, the Institutional Plaintiffs filed their own federal action (together with the Individual Plaintiffs' action, the "Related Actions"), which, like both the *Freeman* Action and the State Court Action, brings claims concerning the Acquisition and makes the same factual allegations set forth in the Second Amended Complaint.

Although all parties agree that the Related Actions should be consolidated, the plaintiffs were unable to reach an agreement regarding the appointment of Lead Plaintiffs and Lead Counsel.  Accordingly, the Institutional Plaintiffs respectfully request that they be appointed as Co-Lead Plaintiffs in a consolidated action, with G&E, KTMC, and RGRD serving as Co-Lead Counsel.  As discussed herein, this proposed leadership structure is identical to that ordered in the State Court Action, thereby ensuring the efficient prosecution of all claims, avoiding any duplication of efforts, and eliminating the risk of inconsistent outcomes.  The Individual Plaintiffs also have the greatest economic interest in the outcome of the case, retained well-qualified counsel with an exemplary track record in successfully litigating claims of this nature, and are already aggressively prosecuting claims related to the Acquisition.

## II.   SUMMARY OF ARGUMENT

### 1.   The Court Should Consolidate the Related Actions.

Both of the actions were filed by stockholders of Tesla derivatively on behalf of the Company.  Both actions name the same defendants.  Both actions allege that the directors of Tesla breached their fiduciary duties and violated Sections 14(a) and 20(a) of the 1934 Act by making materially false and misleading statements in connection with Tesla's acquisition of SolarCity.  Because the defendants and causes of action are identical, and the Related Actions share common issues of fact and law, consolidation is proper and would further the interests of efficiency and judicial economy.  No party objects to consolidation.

4

**2. The Court Should Appoint the Institutional Plaintiffs Lead Plaintiffs and Should Appoint G&E, KTMC, and RGRD Co-Lead Counsel.**

The Institutional Plaintiffs are sophisticated institutional investors with significant financial interests in Tesla, together holding over $23 million worth of Tesla common stock, providing them a strong incentive to oversee the litigation and play a meaningful role in the case. For months, the Institutional Plaintiffs have been vigorously litigating a nearly identical action in the Delaware Court of Chancery. The Institutional Plaintiffs retained counsel with established track records in prosecuting derivative actions, who have a history of working together effectively and the resources and experience necessary to prosecute this litigation vigorously and effectively. With the benefit of the 220 Documents, the Institutional Plaintiffs and their counsel have filed a complaint setting forth in significant detail the alleged wrongdoing—specificity that is lacking in the complaint filed by the Individual Plaintiffs. By both a consolidated action in this Court and the State Court Action, the Institutional Plaintiffs will be able to ensure the efficient prosecution of the underlying claims, avoid duplication of efforts, and eliminate the risk of inconsistent outcomes. Accordingly, the Institutional Plaintiffs and their chosen counsel are best suited to vigorously prosecute the claims arising from the Acquisition to a successful conclusion and should be appointed Co-Lead Plaintiffs and their counsel, Co-Lead Counsel.

## III. STATEMENT OF FACTS

The Institutional Plaintiffs conducted a detailed pre-filing investigation that included, without limitation: (1) seeking books and records from Tesla pursuant to Section 220; (2) reviewing over 1,800 pages of non-public documents concerning the Acquisition that Tesla produced in response thereto; (3) reviewing Tesla's and SolarCity's filings with the U.S. Securities and Exchange Commission ("SEC"); (4) reviewing public statements by Defendants, SolarCity, and Tesla; and (5) promptly filing a detailed omnibus complaint.

### A.      Background of the Acquisition

On August 1, 2016, Tesla announced that it had entered into a definitive merger agreement with struggling solar energy system installer SolarCity.  Pursuant to that agreement, Tesla would acquire SolarCity in an all-stock deal then-valued at approximately $2.6 billion, or between $25.37 and $25.83 per share.  The Acquisition was rife with conflicts of interest and is essentially a bailout of SolarCity, ██████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████

Elon Musk, who is Tesla's controlling stockholder, CEO and Chairman of the Tesla Board, stood on both sides of the Acquisition.  In addition to his roles at Tesla, he was also the co-founder, board chairman, and largest stockholder of SolarCity.  In addition, Elon Musk's cousins Lyndon Rive and Peter Rive are SolarCity's CEO and Chief Technology Officer, respectively.  Elon Musk stood to personally benefit from the Acquisition through, *inter alia*, his substantial SolarCity stockholdings and by avoiding the reputational damage that would result from SolarCity's failure.  The Acquisition also personally benefited at least five other directors on the seven-member Tesla Board who owned stock in and/or had other close ties to SolarCity.

### B.      The Institutional Plaintiffs' Section 220 Investigation and Complaint

Prior to filing their Complaint, plaintiffs in the Institutional Action conducted thorough pre-suit investigations, including seeking documents from Tesla pursuant to Section 220 and reviewing and analyzing (1) approximately 1,800 pages of non-public 220 Documents produced by Tesla, (2) Tesla's and SolarCity's filings with the SEC, including the Proxy, drafts thereof and amendments thereto, and (3) various other public statements about and by the defendants, Tesla, and SolarCity.  This thorough investigation placed them in the strongest position to draft a pleading likely to survive a motion to dismiss pursuant to Federal Rules of Civil Procedure Rules

12(b)(6) or 23.1.   Demonstrating that they are already working together efficiently and effectively on behalf of Tesla, since September 30, 2016, when the Institutional Plaintiffs and Rocke filed their omnibus complaint before the Delaware Court of Chancery, they have successfully advanced the State Court Action, filing the Second Amended Complaint, meeting and conferring with defendants to advance the litigation, and serving extensive discovery requests on Tesla.   On April 21, 2017, the Institutional Plaintiffs and Rocke, along with their counsel, filed their federal derivative complaint before this Court (the "Complaint"), which incorporates the results of all of the Section 220 investigations and sets forth strong claims supported by particularized factual allegations against the defendants named therein.



C.      **The Related Actions**

In the *Freeman* Action, two individual Tesla stockholders have filed one complaint challenging the Acquisition.  Neither of the plaintiffs in the *Freeman* Action received documents as a result of a Section 220 demand, and as a result, the *Freeman* complaint lacks the particularized allegations articulated in the Institutional Plaintiffs' Complaint.  The complaint in

---

[3] Citations in the form "¶ ___" are to the Institutional Plaintiffs' Complaint.

the Related Action also omits other allegations and causes of action asserted in the Institutional Plaintiffs' Complaint.  *See* § III.B, *supra*; IV.B.2, *infra*.

By contrast, the Institutional Plaintiffs received documents from Tesla pursuant to Section 220.  Unlike the *Freeman* plaintiffs, the Institutional Plaintiffs (a) began retaining counsel to investigate the Acquisition under Section 220 shortly after it was announced, (b) began obtaining and analyzing the 220 Documents soon thereafter, (c) leveraged their diligence and more expansive investigation to prepare and file the detailed, well-researched Complaint and Delaware Complaint, and (d) have demonstrated that they are better prepared to litigate their claims efficiently and effectively by vigorously litigating them for over six months.  As a result of these efforts, the Institutional Plaintiffs' Complaint is superior to the complaint filed in the *Freeman* Action.

### D.   The Institutional Plaintiffs' Establishment of a Leadership Structure

Counsel for the Institutional Plaintiffs came together in an effort to coordinate the actions of each of the Tesla stockholders who received documents pursuant to Section 220.  These stockholders were represented by a total of eleven law firms, many of which have significant track records of accomplishment in this type of case.  The Institutional Plaintiffs and Rocke agreed that the Institutional Plaintiffs proposed as Co-Lead Plaintiffs and the three firms proposed as Co-Lead Counsel would best represent the interests of the Company's minority stockholders.  Co-Lead Counsel will be ably supported by these additional lawyers at the direction of Co-Lead Counsel in a coordinated manner that will maximize efficiency.

In addition to eleven firms supporting this Motion, counsel for the Institutional Plaintiffs also contacted counsel for plaintiffs in the *Freeman* Action and proposed that they support the leadership structure set forth herein.  The *Freeman* plaintiffs declined to support the proposal.

## IV.    ARGUMENT

### A.    The *Freeman* and the Institutional Actions Should Be Consolidated

Rule 42(a) provides that, "[i]f actions before the court involve a common question of law or fact the court may . . . consolidate the actions; or . . . issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a)(2)-(3).   The Court has broad authority to consolidate actions where they involve common questions of law or fact, if "in its discretion, it finds that such consolidation would facilitate the administration of justice." *KBC Asset Management NV v. McNamara*, 78 F. Supp. 3d 599, 601 (D. Del. 2015) (internal quotations omitted); *see also Soto v. Hensler*, No. 16-cv-292-LPS-CJB, 2017 WL 590304, at *3 (D. Del. Feb. 14, 2017) (same).   Here, all the parties agree that the two cases should be consolidated, and there is no question that the cases involve common questions of law and fact.   Both actions were filed derivatively by stockholders of Tesla on behalf of the Company against identical defendants.   While the Institutional Plaintiffs' Complaint provides significantly more detail regarding the misdeeds of defendants in connection with the Acquisition, both complaints arise out of the same underlying corporate action—the acquisition of SolarCity by Tesla and disclosures by Tesla in connection therewith, and thus share common questions of fact and law.

Consolidation will avoid "duplicitous, unnecessarily time consuming," work and will avoid the risk of inconsistent rulings, which could serve as "an invitation to controversy in one proceeding as to what had been decided in another." *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).   As such, the Court should consolidate the Related Actions.

**B.    The Court Should Appoint the Institutional Plaintiffs and Their Counsel Co-Lead Plaintiffs and Co-Lead Counsel, Respectively**

Courts have the "inherent authority to appoint a lead plaintiff in a derivative action in order to create an efficient case-management structure." *KBC Asset Mgmt. NV*, 78 F. Supp. 3d at 603 (internal quotations omitted).   In determining which plaintiff should be chosen as lead plaintiff, this Court has looked to the following criteria:

> (1) which plaintiff has the largest financial interest; (2) the preference for institutional investors to lead a lawsuit for shareholders; (3) the quality of the pleadings; (4) the vigor with which the plaintiff has pursued the suit; and (5) the plaintiff's arrangement on the payment of attorney's fees.

*See KBC Asset Mgmt. NV*, 78 F. Supp. 3d at 604 (citing *Berg v. Guthart*, No. 14-cv-00515-EJD, 2014 WL 3749780, at *4 (N.D. Cal. July 30, 2014); *Dollens v. Zionts*, No. 01-cv-5931, 2001 WL 1543524, at **5-6 (N.D. Ill. Dec. 4, 2001)).

Application of these factors strongly favors appointing the Institutional Plaintiffs and their counsel as Co-Lead Plaintiffs and Co-Lead Counsel, respectively.   In short, the Institutional Plaintiffs, who have by far the most significant financial stake in Tesla and the outcome of this litigation, have already organized and coordinated with other counsel and stockholders of Tesla and have filed in both this Court and the Court of Chancery detailed and well-investigated complaints challenging defendants' actions in connection with the Acquisition.   In addition, the Institutional Plaintiffs have retained counsel with proven track records in stockholder litigation and the resources necessary to protect and promote the interests of Tesla and its stockholders. Furthermore, the Institutional Plaintiffs and proposed co-lead counsel are already litigating an almost-identical action in the Court of Chancery, and had been doing do for months before the *Freeman* Action was filed.

**1.    The Financial Interest of the Institutional Plaintiffs**

"Financial stake has some relevance to the plaintiff's interest in a derivative action and

the likelihood that the plaintiff will pursue the derivative claims vigorously." *In re Foundry Networks, Inc. Derivative Litig.*, No. 06-cv-05598, 2007 WL 485974, at *1 (N.D. Cal. Feb. 12, 2007).  The Institutional Plaintiffs hold and have held the following for all relevant periods:

- ATRS holds 31,110 shares of Tesla common stock, valued at more than $9.6 million based on Tesla's current trading price (using its May 3, 2017 closing price of $311.02 per share);

- Boston holds 16,950 shares of Tesla common stock, valued at more than $5.2 million based on Tesla's current trading price;

- Roofers holds 2,950 shares of Tesla common stock, valued at more than $917,000 based on Tesla's current trading price;

- ESK holds 3,800 shares of Tesla common stock, valued at more than $1.18 million based on Tesla's current trading price;

- KBC holds 21,406 shares of Tesla common stock, valued at more than $6.6 million based on Tesla's current trading price;

- OFPRS holds 100 shares of Tesla, valued at more than $31,000 based on Tesla's current trading price; and

- Blue Sky holds 300 shares of Tesla common stock, valued at more than $93,000 based on Tesla's current trading price.

The Institutional Plaintiffs collectively hold over $23 million in Tesla common stock—a significantly larger stake than the *Freeman* plaintiffs, who collectively hold only 3,886 shares, or about $1.2 million, of Tesla common stock.  *See* Freeman Complaint ¶¶ 8 & 9.  Moreover, the Institutional Plaintiffs have no conflicts that would cause their interests to diverge from those of other Tesla minority stockholders.  In particular, the Institutional Plaintiffs held no shares of

11

SolarCity stock at the time of the Acquisition.   Accordingly, the Institutional Plaintiffs' significant stake in the litigation weighs heavily in favor of appointing Institutional Plaintiffs as Co-Lead Plaintiffs.

Additionally, each of the Institutional Plaintiffs is an institutional investor.   Neither of the plaintiffs in the *Freeman* Action is an institutional investor.   Therefore, the second factor supports the designation of the Institutional Plaintiffs as Co-Lead Plaintiffs.   *See Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2015) (recognizing a preference for institutional investors).

## 2.   The Institutional Plaintiffs Filed a Superior Complaint

"Pleadings serve as an accurate and appropriate barometer through which the court can assess which firm would best represent the interests of the shareholders and the rights of the corporation." *In re Comverse Tech., Inc. Derivative Litig*., No. 06-cv-1849, 2006 WL 3511375, at *5 (E.D.N.Y. Dec. 5, 2006).   Accordingly, the quality of the pleading is often the paramount factor in leadership disputes.   Weight should be given to evidence of a more thorough independent investigation conducted by a proposed lead plaintiff's counsel.   *KBC Asset Mgmt. NV*, 78 F. Supp. 3d at 606.   In particular, a plaintiff's use of non-public information obtained pursuant to Section 220 to plead more particularized allegations is a positive factor demonstrating a high-quality pleading.   *N. Miami Beach Gen. Employees Ret. Fund v. Parkinson*, No. 10-cv-6514, 2011 WL 12465137, at *2 (N.D. Ill. July 5, 2011); *cf. In re Johnson & Johnson Derivative Litig.*, 865 F. Supp. 2d 545, n.26 (D.N.J. 2011) (describing the choice to proceed in a derivative action without the benefit of obtaining books and records pursuant to Section 220 as "ill-advised").

The Institutional Plaintiffs' Complaint is far superior to the complaint in the *Freeman* Action.   Among other things, it (a) incorporates important non-public information derived from the 220 Documents that the plaintiffs in the Related Actions failed to obtain; (b) includes

allegations regarding deficiencies in Evercore's fairness opinion that the *Freeman* plaintiffs failed to allege; (c) includes allegations regarding SolarCity's dire financial situation pre-merger, ██████████████████████████████████████████████████████████) and (d) ████████ ████████████████████████████████████████████████████████████████████████████████▌ ████████████████████

### a. Allegations Based on the 220 Documents

Courts have repeatedly emphasized the importance of plaintiffs' counsel taking the time to use Section 220 to develop a record sufficient to craft pleadings with particularized factual allegations necessary to survive the inevitable motions to dismiss. *Id.*; *see also TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc*., No. 18289, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000); *Beam v. Stewart*, 845 A.2d 1040, 1056 (Del. 2004). In the present action, the 220 Documents, which the plaintiffs in the *Freeman* Action failed to obtain, formed the basis for important particularized allegations in the Institutional Plaintiffs' Complaint.

*First*, the 220 Documents ████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████

13



Because plaintiffs in the Related Action failed to obtain documents pursuant to Section 220, their complaints do not include any of these allegations.

### b.  Allegations Regarding Evercore's Deficient Fairness Opinion



Initially established by the Energy Policy Act of 2005 (the "Energy Policy Act"), the Federal SITC presently allows for those investing in solar energy systems to recoup 30% of the total cost of their residential or commercial solar systems through dollar-for-dollar federal tax credits.  ¶ 185.

14

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████   In its Form 10-K filed on February 2, 2016, SolarCity explains that "[t]hese incentives help catalyze private sector investments in solar energy, energy efficiency and energy storage measures, including the installation and operation of residential and commercial solar energy systems."  ¶ 193.  ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ the 30% federal tax credit will phase out substantially by 2023.  ¶ 186.  Specifically, the Federal SITC declines to 26% in 2020, drops again to 22% in 2021, and then settles at a 10% rate for commercial systems in 2023 while credits for residential systems are eliminated entirely.  *Id.*  The *Freeman* Complaint contains none of these allegations.

       **c.**  ██████████████████████████████████████████
██████████████

    The 220 Documents indicate ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

 None of this information was publicly

disclosed to Tesla stockholders in connection with the Acquisition, and these allegations do not

appear in the *Freeman* complaint.

As a whole, the Institutional Plaintiffs' allegations significantly bolster the derivative

claims.  In fact, in the State Court Action, in appointing the Institutional Plaintiffs Co-Lead

Plaintiffs and G&E, KTMC, and RGRD Co-Lead Counsel, that Court held:

> I do believe that the records secured through the Section 220 demands have
> enhanced the quality of the institutional plaintiffs' complaint in a meaningful way.
> The documents are specifically referenced 51 times throughout the complaint. In
> particular, the complaint addresses more specifically issues relating to Mr. Musk's
> alleged motives for seeking to acquire SolarCity . . . .  It makes more specific
> allegations regarding Mr. Musk's involvement in the Tesla board's deliberations
> of the transaction . . . .  The allegations regarding Mr. Musk's financial ties to the
> other members of the Tesla board . . .  are also more specific. And the allegations
> regarding shortcomings in Evercore's financial analysis and fairness opinion . . . ,
> likewise, are more specific. All of these allegations potentially relate to demand
> futility and perhaps other motion practice that might be initiated down the road.

*In re Tesla Stockholders Derivative Litig.*, C.A. No. 12711-VCS, Hearing on Motions to

Consolidate and Appoint Co-Lead Plaintiffs and Co-Lead Counsel, Transcript at 46:3-23 (Del.

Ch. Oct. 10, 2016), which is attached hereto as Exhibit A (hereinafter, "Chancery Trans.").

### 3.     The Institutional Plaintiffs Negotiated Their Attorney's Fees in Arms-Length Transactions.

The Institutional Plaintiffs negotiated their attorneys' fees in arms-length transactions.  *N.*

*Miami Beach Gen. Employees Ret. Fund*, No. 10-cv-6514, 2011 WL 12465137, at *2 (N.D. Ill. July 5, 2011) (noting that when both parties seeking appointment as lead plaintiffs negotiated fees in an arms-length transaction "there is no reason to believe that one or the other fee arrangement will be superior."). Furthermore, proposed co-lead counsel is willing "to accept the court's decision concerning a reasonable fee" and to effectively supervise the litigation to avoid any "duplication of effort by counsel." *Dollens*, 2001 WL 1543524, at *6.

> **4.      The Institutional Plaintiffs Have Already Begun Litigating this Action Vigorously and For the Benefit of Tesla and its Stockholders, and Are <u>Willing and Able to Continue Doing So</u>**

The final factor—the enthusiasm and vigor with which the plaintiffs have prosecuted the lawsuit to date—also favors appointment of the Institutional Plaintiffs. The Institutional Plaintiffs began investigating the defendants' misconduct shortly after the Acquisition was announced, as opposed to waiting several months after the transaction was announced and closed, and thus have acted quickly and diligently to protect and enforce the rights of the Company and its stockholders. Only the Institutional Plaintiffs utilized their statutory right to inspect Tesla's books and records to bolster and strengthen their allegations. Notably, the Institutional Plaintiffs efficiently obtained the 220 Documents and filed an omnibus complaint incorporating the fruits of that effort in the Delaware Court of Chancery <u>months</u> before the *Freeman* Action was filed.

Accordingly, this factor also weighs in favor of appointing Institutional Plaintiffs as co-lead plaintiffs and their counsel as co-lead counsel.

> **C.      <u>The Institutional Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel</u>**

The Court may appoint one or more attorneys as lead counsel. *KBC Asset Mgmt. NV*, 78 F. Supp. 3d at 607. The Court must determine "which counsel will best serve the interest of the plaintiffs with respect to experience and prior success record, the number, size, and extent of

involvement of represented litigations, the advanced stage of the proceedings in a particular suit, and the nature of the causes of action alleged." *Id.* (internal quotations omitted) (citing *Resnik v. Woertz*, 774 F. Supp. 2d 614, 625 (D. Del. 2014) (quoting 9A C. WRIGHT & A. MILLER, FED. PRAC. AND PROC. § 2384 (3d ed. 2008)).   The Court may also consider "the quality of the pleadings, the economic interests of the plaintiffs, and the vigor with which the plaintiffs have prosecuted their lawsuits."  *Resnik*, 774 F. Supp. 2d at 625-26 (internal quotations omitted).

Proposed Co-Lead Counsel—G&E, KTMC, and RGRD—are well-qualified to represent the interests of Tesla and its stockholders in claims concerning the Acquisition.  Each firm has extensive experience in litigating stockholder actions, including in derivative litigation challenging conflicted acquisitions.  Each of proposed Co-Lead Counsel—G&E,[4] KTMC,[5] and RGRD[6]—have achieved significant monetary recoveries for stockholders both before and at trial.

In addition, Proposed Co-Lead Counsel have a demonstrated track record of working together to achieve some of the largest recoveries in Delaware.  Together these same three firms obtained the largest post-trial class recovery in the merger context in *In re Dole Food Co., Inc.*

---

[4] *See, e.g.*, *Louisiana Mun. Police Employees' Ret. Sys. v. Crawford*, C.A. No. 2635-CC (Trans. ID 15160419) (Del. Ch. Jun. 8, 2007) (derivative litigation challenging the conduct of the board of directors of Caremark in connection with a transaction with CVS ultimately resulting in a renegotiation of the terms of the merger agreement providing an additional $3.19 billion in cash consideration in connection with the merger); *In re: Digex, Inc. S'holders Litig.*, No. 18336NC, 2001 WL 34131305 (Del. Ch. Apr. 6, 2001) ($420 million settlement); *Am. Int'l Grp., Inc. Consol. Derivative Litig.*, C.A. No. 769-VCS (Trans. ID 35568523) (Del. Ch. Jan. 25, 2011) ($115 million settlement).

[5] *See, e.g.*, *In re Southern Peru Copper Corp. S'holder Derivative Litig.*, 52 A.3d 761 (Del. Ch. 2011) ($2 billion post-trial judgment); *In re Globe Specialty Metals, Inc. Stockholders Litig.*, C.A. No. 10865-VCG (Trans. ID 58574964) (Del. Ch. Feb. 15, 2016) ($32.5 million settlement); *In re GSI Commerce, Inc. S'holder Litig.*, C.A. No. 6346-VCN (Trans. ID 40885789) (Del. Ch. Nov. 15, 2011) ($23.7 million settlement).

[6] *See, e.g.*, *RBC Capital Mkts. LLC v. Jervis*, 129 A.3d 816 (Del. 2015) (affirming post-trial judgment of over $75 million that, when combined with pre- and post-judgment interest and partial settlements with other defendants, resulted in a total recover of over $110 million).

*Stockholder Litig.*, C.A. No. 8703-VCL, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015), obtaining a $148 million judgment for stockholders in their challenge of a management-led buyout of Dole Food Company. *See also In re Ancestry.com Inc. S'holder Litig.*, No. 7988-CS (Trans. ID 54696319) (Del. Ch. Dec. 12, 2013) (G&E, RGRD and KTMC successfully moved to enjoin a private equity buyout, requiring the defendant board of directors to disclose to stockholders important details regarding changes to the financial projections employed by its financial advisors and deal protection provisions); *In re Del Monte Foods Co. S'holders Litig.*, C.A. No. 6027-VCL (Trans. ID 41167128) (Del. Ch. Dec. 1, 2011) (G&E and RGRD led a stockholder class action challenging a private equity buyout resulting in a $90 million settlement). In appointing G&E, KTMC, and RGRD co-lead counsel in the State Court Action, that Court noted, "The institutional plaintiffs, as assembled, have an extraordinary track record in representative litigation in this Court, and I underscore 'extraordinary.'" Chancery Tr. at 45:20-23.

Furthermore, as demonstrated *supra*, the Institutional Plaintiffs have filed a superior complaint, drafted by G&E, KTMC, and RGRD, and obtained the 220 Documents to ensure the highest quality and most complete work product. This evidences a greater level of investigatory effort by G&E, KTMC, and RGRD and supports their appointment as lead counsel. *Id.* at 608. Finally, the choice of counsel of lead plaintiffs is afforded weight in the Court's lead counsel determination. *Berg*, 2014 WL 3749780, at *7; *Dollens*, 2001 WL 1543524, at *6.

Proposed Co-Lead Counsel's ability to work together efficiently, and willingness to expend the resources necessary to advance the interests of Tesla and its stockholders, is also evidenced by their working together to prepare the Institutional Plaintiffs' Complaint, which incorporates the results of all of the Section 220 investigations and the collaboratively developed legal theories that they believe will stand the strongest chance of success. In that regard, each of

G&E, KTMC and RGRD has already dedicated several attorneys and support staff to litigate this matter and communicates daily to ensure the efficient and effective management of the litigation. G&E, KTMC and RGRD are prepared to effectively prosecute the plaintiffs' claims to the end, including any post-trial appeal, to secure all possible benefits for Tesla and its stockholders and to ensure coordination and efficiency between the actions in federal and state courts.  Proposed Co-Lead Counsel are also supported by several additional large and experienced firms, who regularly represent stockholders in derivative litigation.

## CONCLUSION

For the foregoing reasons, the Institutional Plaintiffs respectfully request that the Court (a) consolidate the Related Actions; (b) appoint the Institutional Plaintiffs as Co-Lead Plaintiffs; and (c) appoint the law firms of G&E, KTMC and RGRD as Co-Lead Counsel.


Dated:  May 4, 2017                                         Respectfully submitted,


                                                              **GRANT & EISENHOFER P.A.**

OF COUNSEL:

                                                   */s/ Jay W. Eisenhofer*

**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**

Lee D. Rudy                                                Jay W. Eisenhofer (#2864)

Eric L. Zagar                                           James J. Sabella (#5124)

Robin Winchester                                  Michael T. Manuel (#6055)

Kristen L. Ross                                     Kelly L. Tucker

280 King of Prussia Road                        123 Justison Street

Radnor, PA  19087                              Wilmington, DE  19801

(610) 667-7706                                  (302) 622-7000

lrudy@ktmc.com                              jeisenhofer@gelaw.com

ezagar@ktmc.com                           jsabella@gelaw.com

rwinchester@ktmc.com                     mmanuel@gelaw.com

kross@ktmc.com                              ktucker@gelaw.com

                                                   *Proposed Co-Lead Counsel*

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
Randall J. Baron
Maxwell R. Huffman
655 West Broadway, Suite 1900
San Diego, CA  92101
(619) 231-1058
randyb@rgrdlaw.com
mhuffman@rgrdlaw.com

*Proposed Co-Lead Counsel*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
140 Broadway
New York, NY  10005
(212) 907-0700
ckeller@labaton.com
ebelfi@labaton.com

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Mark Lebovitch
Jeroen van Kwawegen
1251 Avenue of the Americas
New York, NY  10020
(212) 554-1400
markl@blbglaw.com
jeroen@blbglaw.com

**FRIEDMAN OSTER & TEJTEL PLLC**
Jeremy S. Friedman
Spencer Oster
David F.E. Tejtel
240 East 79th Street, Suite A
New York, NY  10075
(888) 529-1108
jfriedman@fotpllc.com
soster@fotpllc.com
dtejtel@fotpllc.com

**PRICKETT, JONES**
**& ELLIOTT, P.A.**
Michael Hanrahan
Paul A. Fioravanti, Jr.
Samuel L. Closic
1310 N. King Street
Wilmington, DE  19801
(302) 888-6500
mhanrahan@prickett.com
pafioravanti@prickett.com
slclosic@prickett.com

**LABATON SUCHAROW LLP**
Ned Weinberger
Ian Connor Bifferato
Thomas Curry
300 Delaware Ave., Suite 1340
Wilmington, DE  19801
(302) 573-2540
nweinberger@labaton.com
cbifferrato@labaton.com
tcurry@labaton.com

**FRIEDLANDER & GORRIS,**
**P.A.**
Joel Friedlander (#3163)
Jeffrey M. Gorris (#5012)
1201 N. Market Street, Suite 2200
Wilmington, DE  19801
(302) 573-3500
jfriedlander@friedlandergorris.com
jgorris@friedlandergorris.com

**GUTTMAN, BUSCHNER**
**& BROOKS PLLC**
Justin S. Brooks (#6119)
501 Silverside Road, Suite 12
Wilmington, DE  19809
(302) 327-9210
jbrooks@gbblegal.com

*Additional Counsel*

21

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence Eagel
Brandon Walker
885 Third Avenue, Suite 3040
New York, NY  10022
(212) 308-5858
eagel@bespc.com
walker@bespc.com

**STURMAN LLC**
Deborah Sturman
600 Third Avenue, Ste. 2101
New York, NY  10016
(212) 367-7017

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Jay W. Eisenhofer, hereby certify that on May 4, 2017, the foregoing Institutional

Plaintiffs' Brief in Support of Motion for Consolidation and to Appoint Co-lead Plaintiffs and

Co-lead Counsel was filed and served via email upon the following counsel of record:

David E. Ross
Garrett B. Moritz
Ross Aronstam & Moritz, LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
dross@ramllp.com
gmoritz@ramllp.com

*/s/ Jay W. Eisenhofer*
Jay W. Eisenhofer (#2864)